523 F.2d 522
 90 L.R.R.M. (BNA) 2724, 77 Lab.Cas. P 11,104
 REGENCY ELECTRONICS, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
International Union of Electrical, Radio and Machine
Workers, AFL-CIO, CLC, Intervenor.
 No. 72-2001.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 8, 1975.
Decided Oct. 3, 1975.
Rehearing Denied Oct. 30, 1975.
 
 James K. Sommer, Indianapolis, Ind., for petitioner.
 Melvin Warshaw, Washington, D. C., for intervenor.
 Elliott Moore, Deputy Associate Gen. Counsel, Alan D. Cirker, Atty., and John S. Irving, Deputy Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.
 Before CASTLE, Senior Circuit Judge, and SWYGERT and PELL, Circuit Judges.
 CASTLE, Senior Circuit Judge.
 
 
 1
 Regency Electronics, Inc. ("the Company") petitions this court to review an order of the National Labor Relations Board directing it to bargain with the International Union of Electrical, Radio and Machine Workers, AFL-CIO ("the Union"). The Board filed a cross-application for enforcement of its order and the Union intervened. The Company does business in Indianapolis, Indiana, and jurisdiction is therefore proper under 29 U.S.C. § 160(e) (1970). We enforce the Board's order.
 
 
 2
 On December 17, 1971 the Board conducted an election ("first election") at the Company in which a majority of the votes cast were against the Union. This election was subsequently set aside by the Board due to misconduct by the Company and a new election ("second election") ordered. The second election, held on March 24, 1972, resulted in a Union victory. The Company filed 12 objections to the conducting of this election, the fourth of which alleged that the Union had
 
 
 3
 promised discriminatory benefits if employees did sign cards by offering to waive all initiation fees and dues for only those who executed authorization cards.
 
 
 4
 After an evidentiary hearing, the Board overruled the Company's objections and certified the Union. 200 N.L.R.B. 625 (1972).
 
 
 5
 The Company refused to bargain with the Union in order to obtain judicial review of the Board's findings in the representation proceedings. The Board found it in violation of §§ 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and (1) (1970), and the Company sought review in this court. On December 3, 1973 this Court denied the Company's petition for review and enforced the Board's order. 499 F.2d 1129 (7th Cir. 1973).
 
 
 6
 However, while the Company's petition for rehearing and suggestion for rehearing en banc was pending before this court, the Supreme Court decided NLRB v. Savair Manufacturing Co., 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). In Savair the Court held that pre-election waivers of initiation fees which were granted only to those employees who joined the union before an election were coercive and unjustly allowed a union to "buy endorsements and paint a false portrait of employee support during its election campaign." Id. at 277, 94 S.Ct. at 499. Since the Company's fourth objection had questioned the Union's waiver of initiation fees, this court stayed the proceedings before it and remanded the case to the Board to conduct a hearing on the question. 499 F.2d at 1135.
 
 
 7
 On remand,[1] the hearing before the Administrative Law Judge ("the ALJ") disclosed that the Union had an established policy of exempting all employees employed at the time of an election regardless of whether such employee formally joined the Union before or after the election. In the campaign drive preceding the first election at the Company, the Union distributed "charter membership" cards to employees who had previously signed authorization cards. On the front of the cards appeared the following language:
 
 On the reverse side, the card read:
 
 8
 The evidence presented at the hearing disclosed that approximately 50 of these cards were handed out prior to the first election.[2] No cards were distributed during the interval between the two elections, but nonetheless the ALJ found that the meaning of the cards and exactly who would be exempted from the payment of initiation fees were apparently the subject of considerable confusion among the Company's employees.[3] Due to this, the Union mailed a leaflet to all employees on March 9, 1972, fifteen days before the second election. The leaflet included the following language:
 
 
 9
 Q. WILL I HAVE TO PAY AN INITIATION FEE IF THE UNION IS VOTED IN?
 
 
 10
 A. ABSOLUTELY NOT! ANYONE PRESENTLY WORKING AT REGENCY IS HEREBY GUARANTEED THAT THEY WILL NOT PAY ANY INITIATION FEE.
 
 
 11
 Relying primarily on this leaflet, the ALJ concluded that any confusion or ambiguity surrounding the Union's waiver policy was corrected and therefore upheld the second election.[4]
 
 
 12
 During the time while the case was before the ALJ, Board policy called for the application of a "cutoff date rule" in evidentiary hearings barring consideration of certain evidence deemed "too remote." Under that rule as applied in the election context, improper conduct which occurred prior to a first election would not be considered in assessing the validity of a subsequent second election. See Singer Co., Wood Products Division, 161 N.L.R.B. 956, n. 2 (1969). However, between the time the ALJ ruled on the instant case and its subsequent review and adoption by the Board, the Board discarded the cutoff rule in cases involving alleged Savair violations. Gibson's Discount Center, a Division of Scrivner-Boogaart, Inc., 214 N.L.R.B. No. 22 (1974). Furthermore, Board precedent at the time the ALJ was deciding the instant case allowed the factfinder to consider an alleged Savair violation in the context of later clarifying conduct in order to find that a waiver offer was not improper under Savair. See Smith Co. of California, 215 N.L.R.B. No. 97 (1974); Western Refrigerator Co., Subsidiary of the Hobart Manufacturing Co., 213 N.L.R.B. No. 40 (1974).
 
 
 13
 It is the primary contention of the Company on this appeal before us that the Board erred in adopting the ALJ's recommended order. The Company argues that the Board incorrectly read the ALJ's decision as resting on alternative grounds: the first based on all the evidence, including the pre-first election cards, and the second applying the cutoff rule and based only on evidence of conduct occurring after the first election.[5] It is the Company's contention that the ALJ employed the cutoff rule in arriving at Both grounds for decision thus barring his consideration of the charter membership cards.[6] Therefore, the Company insists, because the Board had previously discarded the cutoff rule in Savair cases, it was required to remand the case back to the ALJ for his consideration of the pre-first election cards in arriving at his decision.
 
 
 14
 The Board possesses wide latitude in its review and adoption of decisions and recommended orders of those who conduct its hearings. We cannot find that the Board has erred unless our reading of the ALJ's decision discloses that the Board's interpretation is clearly unfounded. Cf. Plumbers Local No. 519 v. NLRB, 135 U.S.App.D.C. 105, 416 F.2d 1120, 1123 (1969); NLRB v. Fishermen's Union of San Pedro, 374 F.2d 974, 978 (9th Cir. 1967).
 
 
 15
 A reading of the ALJ's decision makes it abundantly clear to us that the ALJ first considered all of the evidence including the charter membership cards in deciding that, taken in total context, the cards and other Union conduct did not amount to a Savair violation. It is clear to us that in so doing, he did not employ the cutoff rule. It is also clear to us that ALJ's second ground, which employed the cutoff rule, was an alternative ground for decision. The following language from the ALJ's decision bears this out:
 
 
 16
 In my opinion the above (March 9) leaflet satisfied any duty imposed upon the Union to clarify ambiguities that may have arisen from the Charter membership cards utilized during the campaign preceding the first election. The terms of the statement in the leaflet are clear and would dispel any reasonable understanding among employees that those who fail to sign cards before the election will be liable for initiation fees. . . .
 
 
 17
 While it is my conclusion that the effects of any ambiguities were erased prior to the second election and that Inland Shoe is distinguishable for that reason, A further ground exists for deeming objection 4 as lacking in merit. . . . Said offers of charter memberships and references thereto were confined to the period preceding the first election, and were not renewed thereafter. In accordance with established Board policy, the critical period for considering interference with a second election begins running from the date of the first election, and the Board will not set aside an election on the basis of events occurring prior thereto. . . . As the cutoff date for consideration of objectionable conduct in this case was December 17, 1971, the date of the first election, and since there is no evidence that charter memberships were referred to thereafter, I find reliance thereon as a basis for challenging the second election to be time-barred under long established Board policy. (ALJ's opinion at 9-10 (emphasis added)).
 
 
 18
 Since the ALJ clearly based his decision on two alternative grounds, we cannot say the Board erred in adopting the decision on the first ground. The Board made it clear it was not adopting the cutoff rule based ground for decision.
 
 
 19
 The Company further argues that regardless of whether the charter membership cards constituted a Savair violation, the Union misrepresented its initiation fee policy in such a way that the second election must be set aside.
 
 
 20
 The ALJ found that the Union's longstanding and established policy was to waive initiation fees for all employees of a company employed at the time of the election regardless of whether the employees joined the Union before or after the election. In light of this, the Company argues that the statement on the cards that "THIS CARD IS VALUABLE KEEP IN YOUR WALLET" constitutes an "offer of a non-existent benefit." The misrepresentation exists, it contends, because the Union's established policy was to waive the fee for all employees as a matter of course and becoming a "charter member" therefore conferred no additional benefit to make the card "valuable." Assuming that the card accurately portrayed the Union's waiver policy, we cannot say that the possession of such a membership card was not of some "value" to its holder so to conclude that its declaration that "THIS CARD IS VALUABLE" constituted a misrepresentation.[7]
 
 
 21
 Accordingly, the Company's petition for review is denied and the Board's cross-application for enforcement is granted.
 
 
 22
 Enforcement granted.
 
 
 
 [1]
 The Administrative Law Judge's Supplemental Decision appears following the Board's Supplemental Decision and Order at 215 N.L.R.B. No. 157 (1974)
 
 
 [2]
 Charles Ziegler, a Union field representative who took part in the first election campaign at the Company, testified that after he ran out of charter membership cards, he distributed copies of a letter from the International Union granting an "exoneration for the present employees at Regency Electronics, Inc. located in Indianapolis, Indiana, from initiation fees when they join the IUE." The letter was distributed to employees on December 14, 1971, three days before the first election
 
 
 [3]
 The ALJ found that much, if not all, of this confusion was the product of anti-union propaganda
 
 
 [4]
 The ALJ found that Inland Shoe Manufacturing Co., 211 N.L.R.B. No. 73 (1974), relied on by the Company, did not require a different result. The Board in Inland Shoe found that the union's failure to clarify its ambiguous initiation fee waiver policy amounted to a Savair violation. In the instant case, the ALJ found that the duty to clarify its ambiguous policy had been fulfilled by the Union by the March 9 leaflet and other clarifying statements
 
 
 [5]
 In a footnote to its Supplemental Decision, the Board stated:
 We do not adopt that part of the Administrative Law Judge's decision which rests on the proposition that the critical period for considering evidence offered to support the Employer's objection describing a union waiver of initiation fees, as condemned by the Supreme Court in N.L.R.B. v. Savair Manufacturing Co., 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973), began with the date the first election was held. See Gibson's Discount Center, a Division of Scrivner-Boogaart, Inc., 214 NLRB No. 22 (1974). We agree, however, with the Administrative Law Judge that, even considering that evidence, the totality of the Union's conduct in this instance did not result in the type of waiver found objectionable by the Court in Savair, supra. (Board's opinion at 2, n. 2.)
 
 
 [6]
 The Company insists that the ALJ employed the cutoff rule in his first "all evidence" ground for decision relying primarily on the ALJ's use of the term "critical period." See ALJ's opinion at 11 (emphasis added):
 Accordingly, I find that Respondent has not established that the Union, during The critical period preceding the second election, improperly induced employees to execute cards by promising them an exemption from initiation fees.
 We think that it is clear from the total context of the ALJ's decision that as used in this passage, the term "critical period" included the time before the first election.
 
 
 [7]
 In its brief before this court, the Company advanced a third argument that the proceedings before the Board were "tainted" by the receipt of ex parte communications in the form of letters from the Union's counsel and a United States Senator in violation of the Board's own rules, 29 C.F.R. § 102.126 (1966). Whatever the propriety of these communications, the letters were made available to the Company and the Company has not been able to demonstrate how it was injured. At oral argument counsel for the Company indicated it was not pursuing the issue further